UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHON M. MELLOW,<br><br>                    Plaintiff,<br><br>          v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | No.  2:18-cv-01262 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for

summary judgment will be GRANTED.

////

////

////

_____

[1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
York, 476 U.S. 467, 470 (1986).

# I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB on October 1, 2014.  Administrative Record ("AR") 201-02.[2] The disability onset date was alleged to be December 17, 2013.  AR 201.  The application was disapproved initially and on reconsideration.  AR 128-32, 136-40.  On October 12, 2016, ALJ Peter F. Belli presided over the hearing on plaintiff's challenge to the disapprovals.  AR 41-91 (transcript).  Plaintiff, who appeared with counsel, was present and testified at the hearing. AR 41.  Michael Frank, a Vocational Expert ("VE"), also testified at the hearing.  Id.

On March 3, 2017, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 15-35 (decision).  On March 12, 2018, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-6.

Plaintiff filed this action on May 15, 2018.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 5, 6.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 13 (plaintiff's summary judgment motion), 14 (Commissioner's summary judgment motion).

# II.  FACTUAL BACKGROUND

Plaintiff was born on in 1971, and accordingly was, at age 43, a younger person under the regulations, when he filed his application.[3]  AR 203.  Plaintiff has at least a high school education and can communicate in English.  AR 33.  Plaintiff worked as a sales representative for security alarm systems from July 1998 to December 2013.  AR 265.

# III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

---

2  The AR is electronically filed at ECF Nos. 9.3 to 9.82 (AR 1 to 4312).
3  See 20 C.F.R. § 404.1563(c) ("younger person").

1    v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

2         Substantial evidence is "more than a mere scintilla," but "may be less than a

3    preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such

4    evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

5    Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the

6    record can constitute substantial evidence, only those 'reasonably drawn from the record' will

7    suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

8    Although this court cannot substitute its discretion for that of the Commissioner, the court

9    nonetheless must review the record as a whole, "weighing both the evidence that supports and the

10   evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,

11   846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

12   court must consider both evidence that supports and evidence that detracts from the ALJ's

13   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

14        "The ALJ is responsible for determining credibility, resolving conflicts in medical

15   testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

16   Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of

17   which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

18   278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

19   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

20   v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

21   2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

22   evidence that the ALJ did not discuss").

23        The court will not reverse the Commissioner's decision if it is based on harmless error,

24   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

25   ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

26   2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

27   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

28

IV.  RELEVANT LAW

Disability Insurance Benefits are available for every eligible individual who is "disabled."

42 U.S.C. §§ 402(d)(1)(B)(ii).  Plaintiff is "disabled" if she is "'unable to engage in substantial

gainful activity due to a medically determinable physical or mental impairment . . . .'"  Bowen v.

Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an

applicant is disabled and entitled to benefits.  20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas,

540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine

disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. § 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. § 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. § 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. § 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

process.  20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis,

the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

2. [Step 1] The claimant has not engaged in substantial gainful activity since December 17, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Step 2] The claimant has the following severe impairments: history of coronary artery disease and ischemic cardiomyopathy; peripheral venous insufficiency; compartment syndrome with right drop foot, peripheral neuropathy, right acquired right pes cavus, contracture of right ankle joint and acquired right hammer toe; sleep apnea; bilateral sensorineural hearing loss (20 CFR 404.1520(c)).

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift and carry, push and pull ten pounds frequently and fifteen pounds occasionally; can sit for eight hours of an eight hour day with normal breaks but requires a sit/stand option where after one hour he can briefly change position not leaving the work station; he can stand and walk for two hours of an eight hour day with normal breaks but after 25-30 minutes must change position to sit for five-ten minutes, then resume standing or walking; he can do no climbing of ladders, ropes and scaffolds; he cannot work in extreme noises without ear protection; he can occasionally kneel, stoop, crouch and crawl; he can occasionally perform foot pedal operations with the right lower extremity; he can less than occasionally be exposed to vibrations; he must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, etc.; he cannot work about hazards (dangerous machinery, unprotected heights etc); he must have less than occasional exposure to extreme temperatures.

6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. [Step 5] The claimant was born on January 24, 1971 and was 42 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

5

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are job that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2013, through the date of this decision (20 CFR 404.1520(g)).

AR 20-35. As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 35.

## VI. ANALYSIS

Plaintiff argues that the ALJ (1) erred procedurally by failing to address a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles, (2) improperly discounted plaintiff's testimony as to the severity of his symptoms, (3) improperly rejected the medical opinions of certain physicians, and (4) failed to consider limitations caused by side effects from plaintiff's medications. ECF No. 13 at 6-18.

A. Step 5 Conflict Between the Vocational Expert and the DOT

At Step 5, the burden shifts to the Commissioner "'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). Under the applicable regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). To meet this burden, the Commissioner takes "administrative notice" of "reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor, which describes the maximum requirements for each listed occupation. 20

1  C.F.R. § 404.1566(d)(1); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) ("[i]n making disability

2  determinations, we rely primarily on the DOT . . . for information about the requirements of work

3  in the national economy"). "In addition to the DOT, the ALJ relies on the testimony of vocational

4  experts who testify about specific occupations that a claimant can perform in light of his residual

5  functional capacity." Zavalin, 778 F.3d at 846; see 20 C.F.R. § 404.1566(e) (use of vocational

6  experts).

7  Here, the ALJ relied on the testimony of vocational expert ("VE") Michael Frank. AR 84-

8  90. At the hearing, the ALJ posed a hypothetical individual similar to plaintiff with numerous

9  limitations, who could sit for a full workday with normal breaks but "requires a sit/stand option,"

10  meaning that he "could sit approximately 1 hour, and then he needs to change the position, not

11  leaving the workstation." AR 85-86. The VE replied that such a person could not perform

12  plaintiff's past relevant work as a security systems sales representative. AR 86. However, the

13  VE identified three other jobs that such an individual could perform: election clerk (DOT

14  205.367–030, sedentary exertion); printed circuit layout taper (DOT 017.687–010, sedentary

15  exertion); and call-out operator (DOT 237.367–014, sedentary exertion). AR 87-88. The VE

16  specified that he selected sedentary occupations due to the sit/stand requirement. AR 87 ("I'm

17  focusing . . . on sedentary because of . . . the sit/stand option . . . .").

18  The ALJ ultimately incorporated this sit/stand requirement into plaintiff's RFC and

19  determined that there were available jobs in the national economy that plaintiff could perform,

20  such as the three jobs identified by the VE. AR 25, 33-34. The ALJ noted that the VE "provided

21  sedentary positions in response to the hypothetical to account for the sit/stand option, which while

22  not recognized under the [DOT], is based upon his experience, education and training." AR 34

23  (citation omitted). The ALJ determined that, "[p]ursuant to SSR 00-4p, . . . the [VE]'s testimony

24  is consistent with the information contained in the [DOT]." AR 34.

25  Plaintiff argues that the ALJ failed to ask the VE whether the VE's testimony conflicted

26  with the DOT, and that this failure constitutes reversible error because the VE's testimony

27  deviated from the DOT—which does not contemplate sit/stand options—and, without an

28  explanation for the "apparent conflict," the court cannot determine whether the Step 5 finding is

7

1    supported by substantial evidence.  ECF No. 13 at 6-7.

2         Social Security Ruling 00-4p was issued to clarify the standards for identifying and

3    resolving conflicts between VE testimony and information in the DOT.  As relevant to this case,

4    SSR 00–4p provides:

5              Occupational evidence provided by a VE . . . generally should be
               consistent with the occupational information supplied by the DOT.
6              When there is an apparent unresolved conflict between VE . . .
               evidence and the DOT, the adjudicator must elicit a reasonable
7              explanation for the conflict before relying on the VE . . . evidence to
               support a determination or decision about whether the claimant is
8              disabled. At the hearings level, as part of the adjudicator's duty to
               fully develop the record, the adjudicator will inquire, on the record,
9              as to whether or not there is such consistency.

10             Neither the DOT nor the VE . . . evidence automatically "trumps"
               when there is a conflict.  The adjudicator must resolve the conflict by
11             determining if the explanation given by the VE . . . is reasonable and
               provides a basis for relying on the VE . . . testimony rather than on
12             the DOT information.

13             ***

14             When a VE . . . provides evidence about the requirements of a job or
               occupation, the adjudicator has an affirmative responsibility to ask
15             about any possible conflict between that VE . . . evidence and
               information provided in the DOT.  In these situations, the adjudicator
16             will:

17                •   Ask the VE or VS if the evidence he or she has provided
                       conflicts with information provided in the DOT; and
18
                   •   If the VE's . . . evidence appears to conflict with the DOT,
19                     the adjudicator will obtain a reasonable explanation for the
                       apparent conflict.
20
               ***
21
               When vocational evidence provided by a VE . . . is not consistent
22             with information in the DOT, the adjudicator must resolve this
               conflict before relying on the VE . . . evidence to support a
23             determination or decision that the individual is or is not disabled.
               The adjudicator will explain in the determination or decision how he
24             or she resolved the conflict. The adjudicator must explain the
               resolution of the conflict irrespective of how the conflict was
25             identified.

26   ////

27   ////

28   ////

SSR 00–4p. [4]  Interpreting this SSR, the Ninth Circuit has held that "the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).

Here, the Commissioner concedes that the ALJ failed to ask the VE if his testimony was consistent with the DOT. ECF No. 14 at 12. Accordingly, the court finds that the ALJ did err. See Massachi, 486 F.3d at 1153 (describing it as procedural error for the ALJ not to ask the VE whether her testimony conflicted with the DOT); SSR 00–4p ("[T]he adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT."). However, failure to inquire, does not necessarily warrant reversal. "This procedural error could have been harmless, were there no conflict, or if the vocational expert had provided sufficient support for [his] conclusion so as to justify any potential conflicts . . . ." Massachi, 486 F.3d at 1153 n.19. The Ninth Circuit has specified that an ALJ need only "follow up" on potential conflicts that are "apparent or obvious":

> For a difference between an expert's testimony and the [DOT]'s listings to be characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT]'s listing of job requirements that are essential, integral, or expected. . . . [T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about.

Gutierrez v. Colvin, 844 F.3d 804, 807-08 (9th Cir. 2016). Thus, the threshold question is whether there was, in fact, an "apparent or obvious" conflict between the VE's testimony and the DOT.

The DOT is silent on whether the identified jobs—or any listed job—allow for a sit/stand option. Lorigo v. Colvin, No. 1:13-CV-00405-SKO, 2014 WL 1577317, at *11 (E.D. Cal. Apr.

---

[4] Social Security Ruling 00–4p, available at 2000 WL 1898704, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000). "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009). The Ninth Circuit gives SSRs deference so long as they do not produce "a result inconsistent with the statute and regulations." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

9

1   18, 2014) ("[T]he DOT does not discuss the availability of a sit/stand option."). "The Ninth

2   Circuit has not directly addressed the question whether DOT silence about a sit/stand option,

3   without more, creates a conflict with VE testimony that a claimant with such a limitation can

4   perform an occupation." Williams v. Berryhill, No. 2:17-CV-00357 AC, 2018 WL 3817560, at

5   *6-7 (E.D. Cal. Aug. 10, 2018). The courts in this circuit are divided on the issue. Edmonds v.

6   Berryhill, No. ED CV 15-2027-SP, 2017 WL 1217081, at *3 (C.D. Cal. Mar. 31, 2017)

7   (collecting cases). In a recent unpublished opinion, however, the Ninth Circuit indicated that the

8   DOT's silence on sit/stand options meant there was no conflict. Dewey v. Colvin, 650 Fed.

9   Appx. 512, 514 (9th Cir. 2016) (unpublished) ("A conflict must exist between the VE's testimony

10  and the DOT in order to trigger the ALJ's responsibility to resolve the conflict. Here, the DOT is

11  silent on whether the jobs in question allow for a sit/stand option. [Citation of occupations] There

12  is no conflict.").

13          In light of Gutierrez and Dewey, the undersigned concludes that there was no apparent or

14  obvious conflict for the ALJ to resolve in this case. Looking at the duties of election clerk,

15  printed circuit layout taper, and call-out operator as described by the DOT, none of the "essential,

16  integral, or expected" requirements of these occupations would require plaintiff to sit or stand the

17  entire time without changing positions. See Edmonds, 2017 WL 1217081 at *4 (following

18  Gutierrez) (holding that there was no obvious or apparent conflict between the VE's testimony

19  and the DOT because a sit/stand option did not affect any essential, integral, or expected duty of

20  an informational clerk or cashier II job). The VE and the ALJ identified sedentary-strength

21  occupations specifically in order to accommodate the sit/stand option that would not have been

22  encapsulated in light-strength occupations. AR 34, 87. There is nothing about the identified jobs

23  which obviously or apparently conflicts with a sit/stand option, and plaintiff has not identified any

24  actual conflict. Accordingly, the ALJ's failure to ask the VE whether there was a conflict was

25  harmless.

26          B. Consideration of Plaintiff's Subjective Testimony

27          Next, plaintiff argues that the ALJ improperly discounted plaintiff's testimony regarding

28  the severity of his symptoms without giving clear and convincing reasons for doing so. The

Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).

"The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina, 674 F.3d at 1112 (citation omitted). "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, "inconsistencies either in [plaintiff's] testimony or between [his] testimony and [his] conduct, [plaintiff's] daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [plaintiff] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959. However, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical

////

11

1  evidence to fully corroborate the alleged severity of pain."  Burch v. Barnhart, 400 F.3d 676, 680

2  (9th Cir. 2005).

3       Plaintiff testified that a combination of impairments arising from his December 2013

4  cardiac arrest and organ failure caused him weakness, fatigue and chronic pain, limiting his

5  physical and cognitive function.  The ALJ found that plaintiff's medically determinable

6  impairments could reasonably be expected to cause the alleged symptoms but that plaintiff's

7  statements concerning the intensity, persistence and limiting effects of these symptoms "are not

8  entirely consistent with" the medical and other record evidence.  AR 26-27.  The ALJ devoted

9  over five pages to evaluating plaintiff's subjective complaints, providing at least four reasons for

10  discounting plaintiff's testimony.  AR 27-32.  The court finds three of these reasons to be legally

11  sufficient.

12       First, the ALJ found that "findings upon physical exams and in medical imagery do not

13  correspond to the level of pain and limitation alleged."  AR 27.  The ALJ accurately summarized

14  nearly two years of diagnostic tests and treatment notes from plaintiff's medical providers over

15  the course of plaintiff's recovery from the cardiac incident.  Id.  From April 2014 through

16  December 2015, tests showed no significant ischemia and asymptomatic coronary artery disease.

17  AR 2846, 2899, 3371, 3405, 3621, 3623, 3652, 3654.  The ALJ particularly noted medical

18  screenings in July and December 2015 in which plaintiff reported exercise functional capacity at

19  4-6 metabolic equivalents (METS), "e.g. Yard work, climb a flight of stairs, walk up a hill"; and

20  daily activities such as daily 1/4-mile dog walks, vacuuming, mopping, and grocery shopping,

21  without experiencing exertional symptoms such as chest pains, palpitations, shortness of breath,

22  or diaphoresis.  AR 2899, 3404, 3408.  The ALJ reasonably concluded that this medical testing

23  and plaintiff's self-reporting did not fully support his allegations of continuing cardiac symptoms

24  and limitations.  The ALJ properly considered these records in assessing plaintiff's credibility,

25  without making them the sole basis upon which he made his determination.  See Burch, 400 F.3d

26  at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain

27  testimony, it is a factor that the ALJ can consider in his credibility analysis.").

28  ////

1    Second, the ALJ found that plaintiff's inconsistencies in following treatment

2    recommendations did not fully support his allegations.  AR 28, 30.  Specifically, the ALJ noted

3    plaintiff's inconsistent use of his CPAP machine to relieve his sleep apnea; inconsistent wearing

4    of compression socks to treat his venous insufficiency; and decision to take medical marijuana

5    despite his treating physician's advice that doing so would require tapering off of his prescribed

6    narcotics.  Id.  The court finds these limited examples of noncompliance are not probative of

7    plaintiff's credibility.  Plaintiff's sleep apnea was relatively minor among his bevy of

8    impairments, and his treating physician acknowledged how "tricky" the CPAP equipment is to

9    tolerate.  AR 3054.  The ALJ identified only three instances of plaintiff presenting at medical

10   appointments without the compression socks he had been instructed to wear to move the venous

11   blood in his right lower extremity.  AR 2489, 3109, 3791.  There is no other indication that

12   plaintiff missed appointments or otherwise ignored his doctors' advice.  Finally, the record does

13   not support the ALJ's characterization of plaintiff's decision to take medical marijuana as being

14   inconsistent with treatment recommendations.  Plaintiff merely asked his treating physician how

15   he might obtain a medical cannabis card, noting that he was exploring the option since none of

16   the prescribed pain medications were helping him much.  AR 2770.  His doctor replied that she

17   could not help obtain the card and informed him that if he chose to take marijuana, they would

18   need to taper him off of Percocet.  Id.  She did not instruct him not to take medical marijuana, and

19   plaintiff's eventual choice to do so therefore cannot be viewed as noncompliance.  Plaintiff's

20   purported inconsistent following of treatment recommendations was not a clear and convincing

21   reason to discount his testimony.

22       Third, in various portions of the decision, the ALJ found plaintiff's ability to engage in "a

23   rather ordinary range of activities of daily living" inconsistent with his subjective complaints.

24   AR 22, 27, 30.  The ALJ noted plaintiff's reported ability to prepare meals, shuttle his two

25   children to and from school, care for and walk a pet dog, shop for groceries, handle family

26   finances, use the computer for research and games, and perform light yard work.  Id.  The ALJ

27   could reasonably conclude that plaintiff's daily activities undermined his claimed inability to

28   work and discount his testimony on that basis.  See Molina, 674 F.3d at 1112 ("ALJ may consider

13

1    inconsistencies either in the claimant's testimony or between the testimony and the claimant's

2    conduct"); Burch, 400 F.3d at 681 ("if a claimant engages in numerous daily activities involving

3    skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations

4    upon making specific findings relating to those activities").

5           Finally, the ALJ found that plaintiff's "allegations are challenged by the opinions of

6    record/the examining and evaluating physicians." AR 30. Plaintiff takes issue with both the

7    wording and the substance of this finding. While the court agrees that the medical opinions

8    discussed by the ALJ do not directly "challenge[]" plaintiff's subjective complaints, the ALJ

9    validly relied on inconsistencies between plaintiff's testimony and the doctors' opinions in

10   discounting plaintiff's testimony. Thomas, 278 F.3d at 958-59.

11          Because the ALJ provided clear and convincing reasons for discounting plaintiff's

12   subjective complaints, there was no error.

13          C.  Evaluation of Medical Opinions

14          Plaintiff next argues that the ALJ erred in his evaluation of the medical opinions provided

15   by (1) the State agency reviewing physicians Dr. S. Jaituni and Dr. D. Pong, and (2) the

16   consultative examiner ("CE") Dr. Janet O'Brien. ECF No. 13 at 14-16.

17          *1. Reviewing Physicians*

18          As to the reviewing physicians, plaintiff argues that the ALJ erred by failing to

19   incorporate in plaintiff's RFC the opinions of Drs. Jaituni and Pong that plaintiff was limited to

20   only occasional verbal communication and occasional balancing. Dr. Jaituni at the initial level

21   and Dr. Pong on reconsideration both opined, as relevant, that plaintiff had a postural limitation

22   of balancing occasionally and had communicative limitations to "Avoid loud & nosy [sic] places

23   at work; only occ. verbal communication." AR 102-03, 122-23. In his decision, the ALJ

24   acknowledged the reviewing physicians' occasional balancing limitation, and the limitation that

25   plaintiff "must avoid loud and noisy places at work where he only occasionally has verbal

26   communication." AR 30. As stated above, the ALJ found plaintiff could perform sedentary work

27   with numerous additional limitations, including that he "cannot work in extreme noises without

28   ////

ear protection." AR 25. The RFC does not specifically mention a postural limitation for balancing.

Although the reviewing physicians' notations regarding communicative limitations are less than crystal clear, the ALJ reasonably interpreted them to mean that plaintiff was limited to occasional verbal communication when in loud places—not that he was limited to occasional verbal communication in general—and adequately incorporated that limitation by precluding plaintiff from working in noisy conditions without ear protection.[5] As to the occasional balancing limitation, even if the ALJ erred in rejecting the postural limitations assessed by Drs. Jaituni and Pong, any error would be harmless. The erroneous omission of postural limitations from an RFC for sedentary work is harmless "since sedentary jobs require infrequent stooping, balancing, crouching, or climbing." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008); see SSR 96–9p, 1996 WL 374185, at *7 ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, *balancing*, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.") (emphasis added).

### 2. *Consultative Examiner*

As to the consultative examiner, plaintiff argues that the ALJ erred by implicitly rejecting (without discussion) several non-exertional limitations Dr. O'Brien found and by expressly discounting others. In her December 2014 consultative examination of plaintiff, Dr. O'Brien opined that plaintiff could stand and walk less than 2 hours of an 8-hour day; sit 6 hours of an 8-hour day; lift and carry 5 pounds rarely; stoop, crouch, kneel and climb less than 2 hours of an 8-hour day ("postural limitations"); reach, handle, finger and feel less than 2 hours with either arm ("manipulative limitations"). Further, she opined that plaintiff requires no assistive device but a right ankle-foot orthoses brace, and that his severe hearing loss constitutes a communicative limitation. AR 2103-04. As relevant to plaintiff's arguments, the ALJ found in his RFC assessment that plaintiff could not climb and could occasionally kneel, stoop, crouch and crawl.

---

[5] The ALJ's hypothetical to the VE also included the limitation that the person could not work around extreme noises without ear protection. AR 85.

15

1    AR 25. The RFC did not include any communicative or manipulative limitations.

2         Plaintiff argues, first, that the ALJ erred by purporting to give "substantial weight" to Dr.

3    O'Brien's postural and communicative limitations but then not assigning an RFC consistent with

4    those opinions. The court disagrees. As to the postural limitations, the ALJ's determination that

5    plaintiff could never climb and could "occasionally" kneel, stoop, crouch, and crawl was

6    consistent with—and thus incorporated—Dr. O'Brien's opinion that plaintiff could stoop, crouch,

7    kneel and climb less than 2 hours of an 8-hour day. See SSR 83-10, 1983 WL 31251, at *5

8    ("'Occasionally' means occurring from very little up to one-third of the time. Since being on

9    one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or

10   walking should generally total no more than about 2 hours of an 8-hour workday . . . .");

11   SSR 96–9p, 1996 WL 374185, at *3 ("'Occasionally' means occurring from very little up to one-

12   third of the time, and would generally total no more than about 2 hours of an 8-hour workday.").

13        As to Dr. O'Brien's opinion that plaintiff's hearing loss constituted a communicative

14   limitation, plaintiff is correct that the ALJ did not explain his treatment of that portion of the

15   opinion, and the RFC does not include a communicative limitation. However, elsewhere in his

16   decision the ALJ did give detailed reasons for not finding plaintiff limited in his ability to

17   communicate. The ALJ accurately described the results of hearing tests and treatment notes in

18   2015 indicating that, although plaintiff remained deaf in his right ear, his hearing in his left ear

19   had improved since his cardiac event in December 2013, and he had "functional residual hearing"

20   better aided with a hearing aid (which plaintiff has worn since age 10) than by a cochlear implant.

21   AR 29, 3048. In light of plaintiff's documented hearing improvement since Dr. O'Brien's 2014

22   evaluation, substantial evidence supports the omission of a communicative limitation from

23   plaintiff's RFC.

24        Plaintiff further argues that the ALJ erred by rejecting Dr. O'Brien's opinion as to

25   plaintiff's manipulative limitations. The ALJ afforded "little weight" to Dr. O'Brien's opinion

26   that plaintiff could reach, handle, finger and feel less than 2 hours of a workday. AR 31. The

27   ALJ reasoned that the record did not demonstrate complaints, diagnosis or treatment regarding

28   plaintiff's upper extremities or support any limitations on gross or fine manipulation. Further,

16

1  plaintiff did not allege impairment of his upper extremities, and no treating source opined he had

2  limited use of his arms or hands.  Id.  The court finds these to be specific and legitimate reasons,

3  supported by substantial evidence, for rejecting Dr. O'Brien's manipulation limitations.  Plaintiff

4  points to medical records documenting plaintiff's sporadic right hand/thumb pain, which he

5  contends the ALJ ignored.[6]  The ALJ's statement that there were no records of "complaints,

6  diagnosis nor treatment with regard to the upper extremities" does not appear to be directed

7  toward plaintiff's hand/thumb pain issues.  Indeed, elsewhere in the decision, the ALJ

8  acknowledged treatment records for this injury, which he described as "transient."  AR 23, 27.

9  Plaintiff does not challenge the ALJ's additional finding that no treating source has opined that

10  plaintiff has limitations with using his arms and hands.  Moreover, as the ALJ noted, plaintiff did

11  not even allege impairment of his upper extremities.  AR 239 (function report not selecting check

12  box for impairment affecting "Using Hands"); see Rollins v. Massanari, 261 F.3d 853, 856 (9th

13  Cir. 2001) (finding substantial evidence supported rejecting doctor's opined limitations that were

14  inconsistent with plaintiff's own description of her limitations).

15          D.  Consideration of Medication Side Effects

16          Finally, plaintiff argues that the ALJ erred by failing to consider the side effects of his

17  medications in determining his RFC.  This argument fails because plaintiff never alleged that the

18  side effects of his (admittedly numerous) medications are disabling and there is no medical

19  evidence that they are or would result in greater limitations than those assessed in plaintiff's RFC.

20  At the hearing, the only specific problem plaintiff testified to regarding his medications was that

21  they made him "extremely tired."  AR 67.  Plaintiff also reported feeling dizziness from

22  Metroprolol; moodiness, depression and sweating from Prednisone; sleepiness and fatigue from

23  Zoloft, which he later discontinued (AR 1554); muscle soreness from Crestor; and restlessness

24  from Norco.  AR 241.  While treatment notes reflect these side effects, no provider indicated that

25

26  [6]  Plaintiff was treated for unprovoked pain at the base of his right thumb once in 2013, once in
    2014, and once in 2015.  AR 670, 2356, 2846, 2919.  X-rays of the hand were negative; and on
27  examination, he had full range of motion and strength in the hand.  AR 674, 2361.  Plaintiff went
    to several physical therapy appointments in early 2016, which reduced the pain.  AR 2471, 4134-
28  32, 4152, 4244.

17

they would impede plaintiff's ability to work.  See <u>Roquemore v. Comm'r of Soc. Sec. Admin.</u>, 374 Fed. Appx. 693, 695 (9th Cir. 2010) ("Nothing in the record suggests that [plaintiff's] ability to work was affected by his medications.  Therefore, the ALJ was not required to include a discussion of side effects."); <u>Norman v. Astrue</u>, No. EDCV 09-01747-JEM, 2010 WL 4916373, at *5 (C.D. Cal. Nov. 23, 2010) (noting that numerous cases have held that an ALJ need not address medication side effects where there is no allegation they interfere with the ability to work beyond RFC assessed limitations, or there is no medical evidence of side effects severe enough to interfere with ability to work).  The ALJ did not err by omitting discussion of the side effects of plaintiff's medication.

VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 13), is DENIED;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 14), is GRANTED;

3.  The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: August 30, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE